## DANSINGER *et al. v.* WHITE.

(*Supreme Court, General Term, Third Department.* July 2, 1892.)

PARTNERSHIP—WHEN RELATION EXISTS—JOINDER OF PARTIES.

In an action to recover for ice converted by defendant, it appeared that plaintiffs entered into copartnership to carry on the ice trade at Glen lake, built an ice house, and began storing ice; that afterwards one of the plaintiffs purchased of the owner of the lake all the ice therein, and agreed with defendant to sell him ice therefrom, the title not to pass to the latter until the ice was paid for; that defendant took the ice in dispute from such lake, but paid nothing thereon. *Held,* that plaintiffs were partners as to such ice, and properly joined in the action.

Appeal from judgment on report of referee.

Action by Robert Dansinger and James H. Vandenburgh against Edward C. White to recover damages for conversion of ice, and to enjoin the defendant from further converting and removing ice claimed by plaintiffs. From a judgment entered on the report of a referee, dismissing the complaint, the plaintiffs appeal. Reversed.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

*Young & Kellogg,* (*L. H. Northrup,* of counsel,) for appellants. *S. & L. M. Brown,* (*L. M. Brown,* of counsel,) for respondent.

MAYHAM, P. J. The complaint in this action alleged that the plaintiffs were the owners of 3,000 tons of ice stored in an ice house, and that the defendant wrongfully carried away 1,500 tons of the same, and was engaged in carrying away the remaining 1,500 tons; that he was not responsible, and plaintiffs could not collect damages of him; and prayed for a preliminary injunction, and for a judgment enjoining the defendant from moving said ice, and for $3,000 and costs. The answer contained a general denial, and alleged a misjoinder of parties plaintiff. The proof tended to show that on the 10th of February, 1890, the plaintiffs entered into a copartnership for the purpose of carrying on the ice business at Glen lake; and on the same day, and after the formation of such copartnership, the plaintiff Vandenburgh made a parol contract with the owner of the portion of Glen lake from which the ice in question was afterwards taken for all the ice on the portion of said lake owned by her, and paid her therefor in cash $50, and took her receipt in these words:

"QUEENSBURY, February 10, 1890.

"I, Mary J. Titus, received of J. H. Vandenburgh fifty dollars for ice in Glen lake for this year, what we own, except what we want for the use of our cottage and our own use here at home, with privilege of putting up an ice house if he wishes, and loading ice cars on our land that forms the lake.

"MARY J. TITUS, Executrix of Titus Estate."

After the payment of the $50, and receiving such receipt, the plaintiff built the ice house, and commenced to cut and gather ice. Prior to the 10th of March, 1890, the plaintiff Vandenburgh agreed by parol to sell the defendant, White, some ice, to be cut and harvested by him from this lake, and about that time the defendant built an ice house on the shore of the lake, and commenced harvesting ice; and a short time after, on the 18th of March, 1890, defendant signed and delivered to plaintiff Dansinger the following memorandum of agreement: "ALBANY, N. Y., March 18th, 1890.

"R. Dansinger, of the city of Albany, N. Y., party of the first part, sold part of ice lying in Glen lake for amount of 15 cents per ton in said lake. Said party who purchases the same for the sum of 15 cents per ton. The said party take it out, cut it, house it, and pay for it as soon as housed; 45 feet per ton. Said ice to be held by R. Dansinger till the party pays for the same, subject in said house or stock.          E. C. WHITE."

At the time of signing this memorandum, the defendant was cutting and putting in this ice at Glen lake. On the trial the defendant put in evidence, under the objection of the plaintiff, an agreement in writing and under seal, and reciting that the plaintiff Dansinger was the owner of all of the ice on Glen lake along the land of Mrs. Titus, to the center line of the lake, and purporting to convey to Charles H. Sherman, Darwin W. Sherman, and Emmet T. Johnson all of the ice to which Dansinger had title in said lake, lying northerly from a line of bushes, at the price of 15 cents per ton, estimating 45 cubic feet to the ton, to be paid for on the completion of the harvesting of the same. The plaintiffs put in evidence a release from Johnson, Sherman & Sherman to R. Dansinger, dated August 30, 1890, of all claim to ice sold by Dansinger to White. The referee refused to find that the defendant was insolvent at the time of the commencement of this action. The referee found that the defendant cut and harvested 2,664 tons of ice, the contract price for which was $381.60, no part of which had been paid by the defendant. The referee also found that about the 10th of February, 1890, plaintiffs entered into copartnership to carry on the business of cutting, storing, and shipping ice at Glen lake, and that the ice cut by the defendant was cut within 250 feet of the westerly shore of the lake, on the premises designated in the parol contract between Mrs. Titus and the plaintiff Vandenburgh, and that before the commencement of this action the plaintiffs demanded payment for said ice of the defendant. The referee also found that, before the commencement of this action, the defendant had shipped to Albany 920 tons of such ice, and

that such shipping was wrongful, and was a conversion of the same by the defendant, and that the defendant never acquired any title to said ice, or any part thereof, or any right to remove or ship the same, and that the value of the ice so shipped and removed by the defendant was $1,848, and that prior to and at the time of the commencement of the action the defendant was wrongfully removing said ice, and converting the same to his own use, and was wrongfully threatening and intending to remove all of said ice. The referee also found that the plaintiff Vandenburgh, under the parol contract made by him with Mrs. Titus for ice, and the payment by him of the purchase price, acquired an equitable interest or right in the ice, and of having the ice, as effectual between him and the owners of the same as though they had conveyed the same in the mode required by statute, but that he never made any transfer of it, or any part thereof, or interest therein, to the plaintiff Dansinger, and that he never owned any interest or title in the same, legal or equitable, and that no part of the ice was ever owned jointly by the plaintiffs or by them as partners, and that they had no interest as partners in the damage resulting from the sale or conversion of the same by the defendant; that the defendant's failure to perform the contract by which he was to have title to the ice in controversy left the equitable title to the same in the plaintiff Vandenburgh, and that such title still remained in him when the defendant removed the same, and the sale and conversion by the defendant was unauthorized and tortious as to the plaintiff Vandenburgh, and that there was no tortious or wrongful conversion of the ice for which the plaintiffs could unite in this action; that there was a misjoinder of parties plaintiff, and that they were not therefore entitled to the relief demanded in the complaint,—and directed judgment for the defendant. The referee, as we have seen, finds that the plaintiffs, at the time of the alleged purchase of the ice by the defendant, were copartners in the ice business on Glen lake, but in substance refuses to find that they were copartners as to the ice in question in this action, and his refusal so to find was excepted to by the plaintiffs.

We cannot agree with the learned referee in his conclusion that the plaintiffs were not partners as to whatever interest was acquired in this ice, by the agreement between Mrs. Titus and the plaintiff Vandenburgh. Both of the plaintiffs swear that they were partners, and the defendant treated them as such, and conducted his negotiations with them as such. Vandenburgh opened negotiations with him, and referred him to Dansinger, whom he described to the defendant as his partner, and pursuant to that direction the defendant continued the negotiations with Dansinger, and consummated the bargain with him. If, therefore, any interest passed under the sale from Mrs. Titus, it seems clear that it became in fact the property of both the plaintiffs under their partnership agreement, and either or both of the plaintiffs were in a position to make a valid sale of the same, and such sale would inure to the benefit of the firm, and for the same reason an action by the firm would be maintainable for any wrongful interference with it. The referee finds that, under the sale of Mrs. Titus and the acceptance by her of the consideration and giving a receipt in writing, acknowledging payment for this ice, an equitable interest was created in the purchaser, which, as between the parties to that transaction, passed the title as effectually as though the same had been conveyed by deed. This determination was not excepted to by either party, and we are not called upon to challenge its correctness on this appeal. Assuming, therefore, for the purpose of this case, that the plaintiffs were partners, and that by the purchase of Mrs. Titus they acquired a right to this ice in the lake, we are brought to the consideration of the question of the defendant's liability for the conversion of the same. The insolvency of the defendant not having been found by the referee, or established, as we think, by the proof, it is quite clear that the plaintiffs have not brought their case within any rule which would entitle them to the equitable relief demanded in

the complaint. But the referee finds that the defendant was guilty of a. wrongful conversion of the ice, or so much of it as was sold and removed by him before the commencement of the action. Whatever the character of this ice may have been in the lake before it was gathered or harvested, it clearly became a chattel after it was taken from the lake, and as it was by the terms. of the agreement to remain the property of the plaintiffs, until fully paid for, the possession of the same, while being cut and removed, must be deemed that of the plaintiffs, and, until their title was divested by the payment of the purchase price, the defendant's custody of the same must be regarded as. that of an agent for the plaintiffs, and, when he sold and removed the same without the consent of the owner, such removal was a conversion, for which trover or an action for a wrongful conversion of this property would lie. For this reason we think the referee erred in dismissing the plaintiffs' complaint, and the judgment should be reversed. Judgment reversed, referee discharged, and a new trial ordered, costs to abide the event. All concur.